**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| JENNIFER CABAN,<br><br>    Plaintiff,<br><br>v.<br><br>SMARTPAY LEASING, LLC,<br><br>    Defendant. | Civil Action No. 8:17-cv-1123-T-36TBM |

**DEFENDANT SMARTPAY LEASING, LLC'S   RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ORDER
REFERRING CASE TO ARBITRATION AND TO
LIFT STAY, AS WELL AS FOR IMPOSITION OF SANCTIONS**

Plaintiff Jennifer Caban ("Plaintiff") asks this Court to vacate its prior order staying the case and seeks a further order imposing sanctions on Defendant SmartPay Leasing, LLC ("SmartPay").  Plaintiff's motion is premised entirely upon the fundamental conceit that SmartPay has refused to participate in arbitration.  Plaintiff knows that is not true and is attempting to use a genuine, good faith dispute regarding an unanticipated conflict between the terms of the parties' arbitration provision and certain "minimum standards" JAMS seeks to impose upon the parties as an excuse to avoid arbitration.  To be absolutely clear, SmartPay has at all times made clear that it is ***fully prepared to pay all fees required under the parties' Arbitration Provision*** and to proceed to arbitration ***in whatever forum Plaintiff chooses***.  The issue has arisen because JAMS indicated that it will not administer the dispute unless SmartPay agrees to waive the terms of the parties' arbitration provision.  SmartPay declined.  In response, ***Plaintiff requested that JAMS dismiss her claim*** and filed the instant motion.  SmartPay has suggested that in light of JAMS' refusal to administer the claim, she refile with the American

Arbitration Association – the other dispute resolution provider identified in the parties' arbitration provision.  Plaintiff has stubbornly refused, claiming that she "does not intend to reward" SmartPay for declining to waive the arbitration provision.

As explained below, Eleventh Circuit law is absolutely clear that the fact that a dispute resolution provider identified in the parties' agreement declines to administer the dispute ***does not*** relieve either party of its obligation to arbitrate unless choosing another forum would frustrate the purpose of the agreement.  Plaintiff cannot credibly claim that having to arbitrate before AAA -- the oldest and largest dispute resolution provider in the country – would deny her due process.  The Court should deny the motion to vacate and Plaintiff's request for sanctions.

## I.  FACTUAL BACKGROUND

### A.  The Parties' Arbitration Agreement

SmartPay operates the SmartPay service, under which SmartPay purchases equipment such as smartphones and provides them to customers on a lease-to-own basis.  [Doc. 12, ¶ 3.] SmartPay enters into a written Lease-Purchase Agreement with every customer, which the customer is required to digitally sign and which sets forth the terms and conditions of the parties' agreement.  [*Id.[1]*]  Attached hereto as Exhibit A is a true and correct copy of the Lease-Purchase Agreement between SmartPay and Plaintiff Jennifer Caban ("Lease Agreement").  The Lease Agreement was digitally signed by Plaintiff on March 29, 2015 at 14:02:16 PM PDT. [Doc. 12, ¶ 5, Ex. A, p. 6 of 15.]

Pursuant to Paragraph 20 of the Lease Agreement, Plaintiff agreed to binding arbitration of any disputes ("Arbitration Provision").  [Doc. 12, ¶ 7.]  Plaintiff had the right to opt out of

---

[1] SmartPay was formerly a division of BillFloat, Inc. BillFloat spun off the SmartPay business into a separate company and assigned certain BillFloat lease agreements, including the Lease-Purchase Agreement between BillFloat and Plaintiff Jennifer Caban to SmartPay.  Hereafter, the term SmartPay shall refer collectively to SmartPay and BillFloat.  Doc. 12, ¶ 4.

binding arbitration by notifying SmartPay in writing within 10 days of signing the agreement, but did not opt out. [*Id.*, ¶ 7; Ex. A, ¶ 20]. Pursuant to the Arbitration Provision, the parties "agree to use one of the two national arbitration organizations and their rules for conducting arbitrations," which are identified as the American Arbitration Association and JAMS. [*Id.*, Ex. A at ¶ 20.] The Arbitration Provision also expressly governs how the costs of arbitration are to be shared among the parties, stating that if Plaintiff files a claim against SmartPay, SmartPay will pay not only its own filing fee, but Plaintiff's as well. [*Id.*]. The agreement further provides, however, that each party must pay its own attorneys' fees and "other costs of arbitration." [*Id.*]

### B. Plaintiff Files a Claim with JAMS, Which Declines to Administer the Claim

After Plaintiff filed her complaint in this Court on May 12, 2017, SmartPay filed a Motion to Compel Arbitration ("Motion to Compel"). [Doc. 11]. Shortly thereafter, Plaintiff filed her Notice of Non-Objection to Defendant's Motion to Compel Arbitration. [Doc. 14]. This Court granted the Motion to Compel on July 11, 2017 and stayed the litigation. [Doc. 15].

On August 30, 2017, Plaintiff filed a demand for arbitration with JAMS, using the form supplied by JAMS. [Declaration of Zina Gabsi (Gabsi Decl."), ¶ 3; Ex. A]. In that demand, Plaintiff checked the box to indicate that this is a "consumer arbitration." [*Id.*] Below the box, the Demand form sets forth the requirements for consumer arbitrations, which are as follows:

> "Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below….
>
> 1. The contract is with a consumer party, as defined in these standards;
>
> 2. The contract was drafted by or on behalf of the non-consumer party; and
>
> 3. The consumer party was required to accept the arbitration provision in the contract….

> In addition, JAMS is guided by its Consumer Minimum Standards and Employment Minimum Standards when determining whether a matter is a consumer matter.

[*Id.*]  The form further states that "If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration." [*Id.*[2]]

On August 30, 2017, SmartPay wrote to JAMS to express its view that the instant arbitration did not meet JAMS' criteria for consumer arbitrations, explaining:

> "[P]ursuant to the JAMS Demand for Arbitration Form, a "consumer arbitration' must meet three requirements. The third requirement is that "[t]he consumer party was required to accept the arbitration provision in the contract." Here, Claimant had the right to opt out of arbitration and her opt-out would not affect her agreement with SmartPay.  It thus seems clear that this dispute does not meet the requirements for a consumer arbitration.

[Gabsi Decl., Ex. B.]  SmartPay further noted that:

> The JAMS Consumer Minimum Standards state that JAMS will administer arbitrations between companies and consumers only if the contract arbitration clause complies with the standards stated therein….
>
> The parties' arbitration provision specifies the costs to be borne by each party. It states that if Claimant files a claim against SmartPay, SmartPay will pay the initial filing fee, but that each party must otherwise cover its costs of arbitration, including attorneys' fees (except that the arbitrator may award fees to the prevailing party).  This obviously diverges from the minimum standard in the rules.

[*Id*].

Beginning on September 20, 2017, the parties received a bewildering series of communications from JAMS.  First, an individual identified only as O. Montealegre sent an

---

[2] Pursuant to JAMS' Minimum Standards, "JAMS will administer arbitrations pursuant to mandatory pre dispute arbitration clauses between companies and consumers only if the contract arbitration clause and specified applicable rules comply with" certain specified standards. [Gabsi Decl., Ex. B.]

email to the parties stating that "JAMS has received a Demand for Arbitration … [and] "[u]pon review of the parties' pre-dispute arbitration agreement JAMS has determined that JAMS' Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness applies." [Gabsi Decl., Ex. D]. The email from O. Montealegre included no reference to or acknowledge of SmartPay's letter of August 30 letter explaining that the matter did not meet the criteria for a Consumer Arbitration under JAMS' own rules.

However, on the very same day -- September 20, 2017 – the parties also received a letter from a different person at JAMS: an individual identified as Elizabeth Carter. Ms. Carter stated that "JAMS has reviewed the correspondence regarding the application of the Minimum Standards of Procedural Fairness" and that "[o]ur policy is that consumers should not be required to pay any portion of an arbitration fee (above $250) that is imposed through an arbitration clause which is required as a condition of the purchase/lease of goods for personal use and where the consumer then has to take affirmative action to opt-out of the arbitration clause." [Gabsi Decl., Ex. E]. The letter continued:

> We understand this policy might go further than the law requires. Notwithstanding that fact, JAMS has chosen to conduct its business in a manner which provides additional protections for consumers where the clause is not negotiated and the transaction is for personal use."

JAMS nevertheless stated that:

> All this means is that JAMS will not administer the case unless the company agrees to waive the provisions which are contrary to our Minimum Standards. ***If you do not agree to the application of our Minimum Standards, then JAMS cannot administer the case.***

[*Id*] (emphasis added). Thus, JAMS had made clear that it would not administer Plaintiff's claim unless SmartPay agreed to waive its contractual rights under the arbitration provision.[3]

---

[3] Under the parties' agreement, SmartPay agreed to pay the *entirety* of Plaintiff's filing fee of $1,200,

The next day, September 21, 2017, counsel for SmartPay received an email from JAMS, attaching an invoice for $4,000, which was described as "Retainer Fees." [Gabsi Decl., Ex. E]. Neither the email nor the attached invoice made reference to or included any acknowledgment of ongoing issue as to whether JAMS would even agree to administer the dispute.

On September 29, 2017, SmartPay wrote to JAMS, stating that it was not willing to waive the cost-sharing provision of the parties' arbitration agreement. [Gabsi Decl., Ex. F]. SmartPay further stated:

> We understand based upon your letter that this means that JAMS will not administer the claim that it must be dismissed; though we note that the agreement permits claimant to utilize either JAMS or AAA, and therefore presume that the claim will be refiled in AAA.

[Gabsi Decl., Ex. F]. The same day -- September 29, 2017 -- counsel for the parties received an email from O. Montealagre stating:

> Dear Counsel,
>
> Thank you for your email.  Please advise if both parties are in agreement that this file should be closed at JAMS.

[Gabsi Decl., Ex. G].  Counsel for Plaintiff quickly responded, stating:

> We are not agreement that this file should be closed at JAMS.  Pursuant to the email below sent September 20, 2017 – "The Minimum Standards will be applicable notwithstanding any contrary provisions set forth in the parties' pre-dispute arbitration agreement."  Therefore, our position is that the case should proceed under JAMS.

---

while Plaintiff would be required to cover any further costs.  Under the Minimum Standards, Plaintiff would pay $250 of the filing fee, while SmartPay would cover the remainder and any additional costs incurred.  Thus, depending upon the amount of further costs incurred, the cost-sharing provision in the parties' agreement could actually be *more favorable* to Plaintiff than the Minimum Standards.

[Gabsi Decl., Ex. G]. As SmartPay was awaiting a further communication from JAMS, counsel for Plaintiff sent an email to JAMS stating – in a complete about-face from earlier request that the matter not be *dismissed*:

> The Claimant has reviewed JAMS' September 20, 2017 Notice (see below) and agrees that the JAMS Minimum Standards are applicable in this case, as this is clearly a consumer matter and not a commercial dispute. Unfortunately, it appears that the Respondent, SmartPay Leasing, LLC, has decided not to honor its agreement to follow the rules set forth by JAMS [Para. 20, Arbitration Agreement] and has stated it will not pay the amounts required of it for JAMS to conduct mediation. In light of this refusal, the Claimant recognizes that JAMS has little choice but to dismiss the arbitration due to the Respondent's failure to pay. Please forward an order of dismissal for our records that documents this reason for the dismissal.
>
> It should also be noted that the Respondent's assumption that this case will be re-filed with AAA is unwarranted. The Claimant does not intend to reward the Respondent for its noncompliance with the arbitration agreement through a change to its apparently favored venue.

[Gabsi Decl., Ex. H]. Thus, putting aside Plaintiff's misrepresentation regarding SmartPay's position, ***Plaintiff unequivocally requested that her claim be dismissed by JAMS***.

In view of the foregoing, SmartPay understood the claim would now be dismissed, as previously indicated by JAMS. However, rather than receiving confirmation from JAMS that it was declining to administer the dispute, much to SmartPay's surprise, on October 24, 2017 counsel received another cryptic letter from O. Montealegre, stating:

> The arbitration of the above referenced matter was submitted to JAMS on September 14, 2017. JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness apply to this case. We have made multiple requests for full payment of the Filing Fee from the Respondents, which is required to commence the proceedings. As of today it remains unpaid and as such the arbitration file will be closed effective October 24, 2017.

[Gabsi Decl., Ex. I]. Oddly, although O. Montealegre referenced the Minimum Standards, she made no mention of her prior email proposing dismissal of the claim; nor any mention of

Claimant's October 11 email requesting dismissal. Rather, the letter *falsely* suggested that dismissal was for non-payment; rather than because JAMS refused to administer the dispute or that Claimant requested dismissal. Seeking to take advantage of this false implication, Plaintiff now seeks to vacate the stay on the purported grounds that SmartPay has refused to pay; when, in fact, the only thing SmartPay has refused to do is to be bullied into waiving its contractual rights under the parties' Arbitration Provision.

## II. LEGAL ANALYSIS

### A. The Premise of Plaintiff's Motion – That SmartPay Refused to Arbitrate -- Is Entirely Inaccurate

There is no dispute that this matter is subject to the Arbitration Provision in the parties' Lease Agreement. Plaintiff chose to file her claim with JAMS, as was her right under the Lease Agreement. Unfortunately, JAMS declined to administer the arbitration because it deemed the matter to be a "consumer arbitration" despite the fact that *it did not meet JAMS' own criteria* for designation as a consumer arbitration. Indeed, JAMS' letter of September 20 effectively conceded that the dispute did not meet the written criteria for application of the Minimum Standards. Instead, Ms. Carter made clear that she was invoking an unwritten "policy … that consumers should not be required to pay any portion of an arbitration fee (above $250) that is imposed through an arbitration clause which is required as a condition of the purchase/lease of goods for personal use and where the consumer then has to take affirmative action to opt-out of the arbitration clause." To SmartPay's knowledge, the "policy" articulated by Ms. Carter is nowhere evidenced in the Minimum Standards, nor JAMS' Arbitration Rules and Procedures. Thus, there is no way that the parties could have been aware of this policy at the time the Lease Agreement was entered.

Although Plaintiff seeks to take advantage of the false implication left by O. Montealegre's October 11 letter that SmartPay's refusal to pay was the cause of the dismissal, the foregoing documentary record makes clear that ***Plaintiff herself requested that the matter be dismissed*** after JAMS stated it would decline to administer the claim. To claim that it was SmartPay's refusal to pay – rather than a good faith dispute regarding how to resolve a conflict between the parties' Arbitration Provision and the JAMS' administrator's application of an unwritten policy – is misleading and deeply unfair. As the foregoing plainly illustrates, the entire premise of Plaintiff's motion – that SmartPay refused to arbitrate – is factually inaccurate. SmartPay has expressly urged Plaintiff, in light of JAMS' refusal to administer the claim, to submit her claim with AAA so that the arbitration can proceed. Plaintiff has refused; preferring instead to try to leverage this dispute to escape her obligation to arbitrate her claim.

> **B. Contrary to Plaintiff's Assertion, At No Time Did JAMS Indicate that It Was Willing to Administer the Claim Consistent with the Terms of the Parties' Agreement**

Plaintiff also contends that SmartPay should be deemed to have "walked away" from arbitration because, according to Plaintiff, "the JAMS arbitration administrator made it clear that JAMS' decision on the application of its 'Minimum Procedures of Procedural Fairness' for consumers could be brought before the arbitrator when one was assigned and that the Defendant could proceed to the arbitrator selection process 'without waving any objections.'" [Plaintiff's Motion, p. 3]. As with her contention regarding nonpayment, this assertion is also untrue. In its September 20, 2017 letter, JAMS made crystal clear that it would *only* administer the claim if SmartPay waived the cost-sharing provision:

> JAMS will not administer the case unless the company agrees to waive the provisions which are contrary to our Minimum Standards. If you do not agree to

>the application of our Minimum Standards, then JAMS cannot administer the case.

[Gabsi Decl., Ex. E]. It is difficult to imagine a more definitive statement than the foregoing. Although JAMS went on to state that the parties were "free to raise any *additional* questions regarding the application of the Minimum Standards with the Arbitrator, once appointed,"[4] *nowhere* did JAMS indicate that it would reconsider its decision. Nor did JAMS offer any indication that the Arbitrator was empowered to reverse JAMS' determination. Thus, Plaintiff's assertion that JAMS indicated a willingness to administer the claim consistent with the terms of the parties' agreement is simply untrue.

### C. Plaintiff's Argument that by Agreeing to Abide by JAMS' "Rules" SmartPay Agreed to the "Consumer Minimum Standards" Is Inconsistent with the Facts and the Law

Plaintiff next argues that by agreeing to "use one of the two national arbitration organizations and their rules for conducting arbitrations," Defendant "explicitly agreed" to the application of JAMS' Minimum Standards. [Plaintiff's Motion, p. 5]. This argument is unsupported by either the facts or the law.

The first problem with Plaintiff's argument is that it attempts to conflate the JAMS Consumer Minimum Standards with the JAMS Rules for conducting arbitration, which are entirely distinct items and serve distinct purposes. The Consumer Minimum Standards are, as the name suggests, *standards* which JAMS uses to determine whether or not it will administer an arbitration involving a consumer. They are not and do not purport to be "rules." The JAMS rules are just that – procedural rules which govern the conduct of arbitrations.

---

[4] *Id.* (emphasis added).

JAMS has two sets of rules governing the conduct of arbitrations: (1) "Comprehensive Arbitration Rules & Procedures" and (2) "Streamlined Arbitration Rules and Procedures." [*See* Gabsi Decl., Ex. J (Comprehensive), K (Streamlined)]. Which set of rules applies is determined primarily by the amount in controversy; with matters involving a claim in excess of $250,000 being governed by the Comprehensive Rules, and matters below that threshold amount governed by the Streamlined Rules. [*See* Gabsi Decl., Ex. J, Rule 1(b); Ex. K, Rule 1(b)]. By their terms, these Rules apply where, as here, the parties' "have provided for Arbitration by JAMS … without specifying any particular JAMS Rules." [*See* Gabsi Decl., Ex. J, Rule 1(b); Ex. K, Rule 1(b)]. Here, the Arbitration Provision states that the parties agreed to "use one of the two national arbitration organizations and their ***rules for conducting arbitrations***," without specifying a particular set of rules. (emphasis added). Thus, to the extent JAMS were to administer the claim, either the Comprehensive or the Streamlined Rules would apply, depending upon the amount in controversy.[5] It is therefore abundantly clear that by agreeing to JAMS' "rules for conducting arbitrations," SmartPay was agreeing to abide by either the Comprehensive or Streamlined Rules for conducting arbitration. Nothing in the Arbitration Provision in any way indicates an agreement to substitute the JAMS' Consumer Minimum Standards for the express cost-sharing provision set forth in the Agreement.

Furthermore, even if one were to argue – solely for the sake of argument – that by agreeing to abide by an organization's "rules for conducting arbitrations," the parties thereby also agreed to abide by JAMS' Consumer Minimum Standards, even JAMS conceded by way of tis September 20 letter that the dispute did not meet the written criteria for application of the Consumer Minimum Standards, and that instead JAMS was invoking an unwritten policy that if

---

[5] Plaintiff specified the amount in controversy to be $1,500,000.00.

a party must affirmatively opt-out of arbitration, the Minimum Standards will apply. However, nowhere is this unwritten policy evidenced in the Minimum Standards, or anywhere else of which SmartPay is aware. Thus, there is no way that SmartPay could have anticipated or agreed to application of this unwritten policy.

Finally, even if one assumes – again for sake of argument --- that by agreeing to abide by a dispute provider's "rules" a party is agreeing to abide by whatever policies that provider may at any point in the future adopt – a dubious proposition -- one would be faced with an express conflict between different provisions of the parties' Arbitration Provision. That is, on the one hand, you have an express cost-sharing provision and, on the other hand, you have a general agreement to abide by the provider's "rules." To the extent it can be said there exists such a conflict, it must be resolved under standard rules of contract interpretation which, as explained below, provide that the more specific provision controls over the more general.

Under the Federal Arbitration Act,[6] arbitration provisions in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). As the Supreme Court has explained, the FAA reflects the 'fundamental principle that arbitration is a matter of contract.'" *Id.* at 339. "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, [citation] and enforce them according to their terms." *Id.; see also Resnick v. J. Weinstein and Sons, Inc.,* 163 So. 3d 700, 703 (Fla. 4th DCA 2015) ("[B]ecause arbitration provisions are contractual in nature, construction of such provisions and the contracts in which they appear remains a matter of contract interpretation.").

---

[6] The Arbitration Provision is governed by the Federal Arbitration Act ("FAA") and Florida law. [Ex. A, §20].

Under long established principles of contract interpretation, "where there are general and special provisions in a contract relating to the same thing, the special provisions will govern its construction over matters stated in general terms." *Ibis Lakes Homeowners Ass'n, Inc. v. Ibis Isle Homeowners Association, Inc*., 102 So. 3d 722, 728 (Fla. 4th DCA 2012), *quoting Aetna Life Ins. Co. v. White,* 242 So. 2d 771, 773 (Fla. 4th DCA 1970); *see also Raines v. Palm Beach Leisureville Cmty. Ass'n,* 317 So. 2d 814, 817 (Fla. 4th DCA 1975) (rule of *ejusdem generis* directs "that a specific clause takes precedence over a general clause."). Here, the Arbitration Provision expressly specifies the manner in which the costs of arbitration are to be shared as between the parties, while only generally incorporating by reference the rules for conducting arbitrations of the identified organizations. Thus, even if one were to argue that by agreeing to use the "rules for conducting arbitration," SmartPay somehow also agreed to the unwritten policy articulated by Ms. Carter or even the Consumer Minimum Standards, under the rule of *ejusdem generis*, the cost-sharing provision expressly set forth in the parties' agreement would control over any contrary policy. Indeed, to hold otherwise would essentially render meaningless the cost-sharing provision of the parties' agreement; something courts are not permitted to do. *4927 Voorhees Road, LLC v. Mallard,* 163 So. 3d 632, 634 (Fla. 2d DCA 2015) ("All provisions of the arbitration agreement must be interpreted in such a way as to prevent rendering them meaningless…."); *Klemish v. Villacastin* 216 So. 3d 14 (Fla. 5th DCA 2016), *review denied sub nom. Kindred Hospitals East, LLC v. Estate of Klemish,* 2017 WL 2210392, Case No. SC16-1353 (Fla., May 5, 2017), *reh'g denied* 2017 WL 2644699, Case No. SC16-1353 (Fla., June 20, 2017) (court not permitted to rewrite the parties' agreement). As a result, Plaintiff's argument that SmartPay can be legally compelled to waive the cost-sharing provision in favor of the Minimum Standards is unsupported under any theory.

### D. The Law Is Clear that the Unavailability of an Arbitral Forum Is Not Grounds for Evading Arbitration

Plaintiff's final tactic is to summarily dismiss the possibility of pursuing her claim before the AAA, arguing that it would deny her "the contractually-provided right to choose between the two arbitration organizations," and casting aspersions on SmartPay's motives and the impartiality of AAA. [Plaintiff's Motion, p. 6]. First, the Arbitration Provision states that the parties "agree to use one of the two national arbitration organizations and their rules for conducting arbitrations." Nowhere does the agreement state that Plaintiff has the absolute right to the arbitral forum of her choosing, even where resort to that forum would subvert other express terms of the parties' agreement. As noted above, to the extent the express terms of the parties' agreement conflict with arbitral rules, those rules must yield. *Ibis Lakes Homeowners Ass'n, Inc.,* 102 So. 3d at 728; *cf. Azteca Const., Inc. v. ADR Consulting, Inc.*, 121 Cal. App. 4th 1156, 1167 (2004) (where AAA rule was in conflict with statutory scheme for selecting arbitrator, AAA rules "must yield.").

Finally, the law is absolutely clear that ***the inability or unwillingness of a dispute resolution provider identified in the parties' contract to administer the claim does not relieve a party of the obligation to arbitrate***, unless choosing another forum would frustrate the essential terms of the bargain. Thus, in *New Port Richey Medical Investors, LLC v. Stern ex rel. Petscher,* 14 So. 3d 1084 (Fla. 2d DCA 2009), the parties' agreement provided that any disputes would be submitted to arbitration before the American Arbitration Association and that "[i]n conducting the hearing and all other proceedings relative to the arbitration of the claims(s), the arbitrators shall apply the applicable rules of procedure of the AAA." *Id.* at 1086. In opposing a motion to compel arbitration, the defendant presented evidence that "the American Arbitration Association has announced that it will no longer accept the administration of cases involving individual

patients without a post-dispute agreement to arbitrate." *Id.* The circuit court ruled that in light of the unwillingness of AAA to administer the dispute, the defendant was relieved of the obligation to arbitrate. The appellate court reversed, making clear that "the parties' arbitration agreement is not rendered invalid or unenforceable simply because the AAA is unavailable to conduct the arbitration." *Id.* at 1087; *see also Estate of Perez v. Life Care Centers of America, Inc.* 23 So. 3d 741, 742 (Fla. 5th DCA 2009) (fact that AAA adopted policy declining to administer healthcare disputes unless parties agreed to arbitrate post-dispute did not invalidate arbitration agreement); *Sarasota Facility Operations, LLC v. Manning,* 112 So. 3d 712, 715 (Fla. 2d DCA 2013) (where parties' agreement mandated use of National Arbitration Forum ("NAF"), fact that NAF was enjoined from administering plaintiff's claim did not vitiate obligation to arbitrate dispute); *Spring Lake NC, LLC v. Figueroa,* 104 So. 3d 1211, 1215–16 (Fla. 2d DCA 2012) (although arbitration provision required use of a "nationally recognized arbitration association," fact that none of the three nationally recognized arbitration associations was willing to administer the dispute did not relieve parties of obligation to arbitrate dispute); *Betts v. FastFunding The Company, Inc*., 60 So. 3d 1079, 1082–83 (Fla. 5th DCA 2011) (unavailability of chosen forum does not invalidate arbitration agreement).

In assessing whether the unavailability of a designated forum invalidates an arbitration agreement, the courts look to whether there is a "factual basis for the plaintiff's assertion that the specification of the [arbitration organization] was so material to the contract that it must fail if they are unavailable." *Wright v. GGNSC Holdings LLC,* 808 N.W.2d 114, 122 (S.D. 2011) (citing *New Port Richey Med. Investors*., 14 So. 3d 1084). Here, Plaintiff has made no showing whatsoever that the willingness of JAMS to administer the dispute was essential to the parties' agreement -- nor could she. In this case, unlike the forgoing cases, the parties' arbitration

agreement allows for the use of either JAMS or AAA, and there is no indication from AAA that it is unwilling to administer the dispute. Indeed, SmartPay currently had two other similar matters pending before the AAA pursuant to the very same arbitration provision with the very same cost-sharing provision. Furthermore, the reason offered by Plaintiff for not proceeding before AAA is that she doesn't want to "reward" SmartPay for declining to waive the terms of the parties' agreement. Plaintiff has entirely failed to demonstrate that she lacks an arbitral forum or that the ability to arbitrate before JAMS was an essential term of the parties' agreement. *Cf. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 476 (1989) ("There is no federal policy favoring arbitration under a certain set of procedural rules.").

### III.  CONCLUSION

In sum, Plaintiff's effort to avoid arbitration by claiming that SmartPay refused to arbitrate is both factually and legally untenable. If anyone has failed to arbitrate, it is Plaintiff[7]. For all of the above reasons, Plaintiff's motion should be denied and the Court should impose sanctions upon Plaintiff's counsel for filing this wasteful and unnecessary motion.

Dated:   February 5, 2018.                    Respectfully submitted,

**BRYAN CAVE LLP**

By: */s/ Zina Gabsi*
    Zina Gabsi

---

[7] On January 18, 2018 Plaintiff filed a Notice of Supplemental Authority attaching a recently entered order granting her Motion to Vacate filed in another unrelated action [Doc. 20]. Opinions of sister courts are not binding and are merely persuasive. *See United States v. Lloyd*, Case No. 10-81127-CIV DIMITROULEAS/SNOW, 2011 WL 13227871 (S.D. Fla. Oct. 24, 2011). Furthermore, SmartPay filed a Notice of Appeal in that matter. Thus, the order is not properly cited as authority.

        Florida Bar No. 73789
        200 S. Biscayne Blvd., Suite 400
        Miami, FL 33131
        Telephone:  (786) 322-7500
        Facsimile:   (786) 322-7501
        E-Mail:   zina.gabsi@bryancave.com

        COUNSEL FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

This is to certify that the foregoing **RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ORDER REFERRING CASE TO ARBITRATION AND TO LIFT STAY, AS WELL AS FOR IMPOSITION OF SANCTIONS** has been filed via the Courts CM/ECF system, and served by electronic mail on the following counsel of record:

> Heather Jones, Esq.
> William "Billy" Peerce Howard, Esq.
> The Consumer Protection Firm, PLLC
> 210-A South MacDill Avenue
> Tampa, FL 33609
> Heather@TheConsumerProtectionFirm.com
> Billy@TheComsumerProtectionFirm.Com

This 5th day of February, 2018.

                 /s/ Zina Gabsi
                 Zina Gabsi, Esq.
                 Florida Bar. No. 73789
                 BRYAN CAVE LLP
               *Counsel for Defendant SmartPay Leasing, LLC*