UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER CABAN,

      Plaintiff,

v.                                       Case No: 8:17-cv-1123-T-36TBM

SMARTPAY LEASING, LLC,

      Defendant.

_____/

## <u>ORDER</u>

This matter comes before the Court upon the Plaintiff's Motion to Vacate Order Referring Case to Arbitration and to Lift Stay, as Well as Imposition of Sanctions (Doc. 19), and Defendant's response in opposition (Doc. 22). In the motion, Plaintiff states that Defendant defaulted on its arbitration obligations by refusing to pay the applicable fees. The Court, having considered the motion and being fully advised in the premises, will grant-in-part Plaintiff's Motion to Vacate Order Referring Case to Arbitration and to Lift Stay, as Well as Imposition of Sanctions.

### I.    BACKGROUND

Defendant SmartPay operates the SmartPay service which allows consumers to purchase smartphones on a lease-to-own basis. Doc. 12[1] at ¶ 3. Every customer digitally signs a Lease-Purchase Agreement, which includes the terms and conditions. *Id*. Plaintiff Jennifer Caban signed a purchase agreement (the "Lease Agreement") on March 29, 2015. Doc. 12 at ¶ 5, Doc. 22-1. Caban agreed to binding arbitration of all disputes in paragraph 20 of the Lease Agreement (the "Arbitration Provision"). Doc. 22-1 at ¶ 7. The Lease Agreement gave Caban the right to opt-out of the Arbitration Provision in writing within ten days of signing it. Doc. 12 at ¶ 7, Doc. 22-1 at ¶

---

[1] Declaration of Winnie Lai in Support of Motion to Compel Arbitration.

20. SmartPay received no communication from Caban requesting to opt-out.  Doc 12 at ¶ 7.  The

Arbitration Provision permits the parties to use "one of the two national arbitration organizations

[the American Arbitration Association or JAMS] and their rules for conducting arbitrations." Doc.

22-1 at ¶ 20. It also provides that SmartPay will pay Caban's filing fee, but each party must pay

its own attorneys' fees and "other costs of arbitration." *Id*. It permits either party to file a claim

with either organization; if SmartPay chooses an organization which Caban finds unacceptable,

Caban has the right to choose the other organization. *Id*.

On May 12, 2017, Caban filed her Complaint alleging violations of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* and the Florida Consumer Collection Practices

Act, Fla. Stat. § 559.55 *et seq*.  Doc. 1 at ¶ 4. SmartPay moved to compel arbitration, Doc. 11; and

Caban filed a Notice of Non-Objection to Defendant's Motion to Compel Arbitration. Doc. 14.

The Court granted SmartPay's Motion to Compel and stayed the litigation. Doc. 15.

Plaintiff then filed a demand for arbitration with JAMS and indicated on the Demand for

Arbitration Form (the "Demand") that the case was a "consumer arbitration." Doc. 23-1 at 4. The

Demand defines consumer arbitrations as:

> [A]n arbitration conducted under a pre-dispute arbitration provision
> contained in a contract that meets the criteria listed in paragraphs (1)
> through (3) below…
>
> 1. The contract is with a consumer party, as defined in these standards;
> 2. The contract was drafted by or on behalf of the non-consumer party;
>    and
> 3. The consumer party was required to accept the arbitration provision
>    in the contract ….
>
> In addition, JAMS is guided by its Consumer Minimum Standards
> and Employment Minimum Standards when determining whether a
> matter is a consumer matter.

*Id*. The Demand also states that "[i]f Respondent [SmartPay] disagrees with the assertion of Claimant [Caban] regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration." *Id*. (emphasis in original).

SmartPay disagreed with Caban's assertion and communicated the same to JAMS and Caban in a letter dated August 23, 2017. Doc. 23-3. It argued that Caban had the right to opt out of arbitration and her option did not affect her agreement with SmartPay, thereby disqualifying the dispute as a "consumer arbitration" as defined by JAMS. Doc. 23-3 at 1-2.  It also noted the conflict between the Arbitration Provision and Consumer Minimum Standards regarding payment of fees and costs. *Id*.

Starting September 20, 2017, the parties received several communications from JAMS. Olga Montealegre sent an e-mail to the parties stating that JAMS' "Policy on Consumer Arbitrations Pursuant to the Pre-Dispute Clauses Minimum Standards of Procedural Fairness" applied to the case. Doc. 23-4. The e-mail did not acknowledge SmartPay's August 30, 2017 letter or that JAMS was aware that SmartPay contested the applicability of the consumer arbitration label. *See id*. The same day, SmartPay received a letter from Elizabeth Carter at JAMS which acknowledged SmartPay's objection and noted that its "policy is that consumers should not be required to pay any portion of an arbitration fee (above $250) that is imposed through an arbitration clause which it required as a condition of the purchase/lease of goods for personal use and where the consumer then has to take affirmative action to opt-out of the arbitration clause." Doc. 23-5. The letter stated that in order to proceed with the arbitration, SmartPay had to waive any of its provisions which contradicted the Consumer Minimum Standards. *Id*.

The next day, SmartPay received an e-mail from JAMS with a $4,000 invoice for "retainer fees." Doc. 22 at 6.[2] On September 29, 2017, SmartPay wrote to JAMS stating its unwillingness to waive cost-sharing as provided in its Arbitration Provision. Doc. 23-6. It acknowledged that JAMS would have to dismiss the claim and noted that it could proceed with arbitration through AAA. *Id*. The same day, Montealegre e-mailed counsel for the parties requesting whether they were in agreement to close the file at JAMS. Doc. 23-7. Caban's counsel replied that the parties had not agreed to close the file, and she wanted to proceed under JAMS. *Id*. On October 11, 2017, Caban's counsel e-mailed JAMS requesting dismissal.  Doc. 23-8. She stated that SmartPay's assumption that she would re-file the case with AAA was "unwarranted" and she would not "reward" it for its noncompliance with the Arbitration Provision.  *Id*.

On October 24, 2017, counsel received another letter from Montealegre stating that because JAMS had made multiple requests to SmartPay to pay the filing fee without compliance it was closing the file that day. Doc. 23-9. The letter did not reference the prior correspondence regarding whether the dispute was a consumer arbitration or Caban's counsel's October 11, 2017 request to dismiss the claims. *See id*. Plaintiff then filed this motion requesting that the Court vacate the order referring the parties to arbitration and sanction SmartPay.

## II.   LEGAL STANDARD

### a.  Arbitration

The Federal Arbitration Act [FAA], 9 U.S.C. § 1, *et seq.*, codifies a "liberal federal policy favoring arbitration," and requires the courts to rigorously enforce agreements to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). That policy rules

---

[2] Although the response in opposition cites the Gabsi Declaration, Ex. E, that attachment is the September 20, 2017 letter from JAMS.

out any "judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals," *id.* at 627, and establishes that the courts should resolve doubts concerning the scope of arbitrable issues in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983).

Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. *Id.* at 24. Notwithstanding this strong federal policy, however, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287 (2010); *Lawson v. Life of the South Ins. Co.,* 648 F.3d 1166 (11th Cir. 2011). The FAA requires a court to stay its proceedings pending arbitration provided "the applicant for the stay is not in default in proceeding with the arbitration." 9 U.S.C. § 3.

### b.  Sanctions

Federal courts possess the inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," and, thus can impose "sanction[s] for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quotations omitted). Similar to § 1927, a federal court's inherent sanctioning authority permits it to impose sanctions "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quotation omitted); *see also Meidinger v. Healthcare Indus. Oligopoly*, 391 Fed. Appx. 777, 780 (11th Cir. 2010) ("In order to exercise its inherent power to award sanctions, the court must find that a party acted in bad faith."). Finally, "[i]nherent powers must be exercised with restraint and discretion." *Footman*

*v. Cheung*, 341 F. Supp. 2d 1218, 1224 (M.D. Fla. 2004) (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

## III.   DISCUSSION

Caban argues that SmartPay's "obstinate refusal" to pay the arbitration fees after JAMS' repeated requests led to the dismissal. She therefore argues that SmartPay's actions constitute a waiver of arbitration, or a breach of the agreement, or both. She requests that the Court vacate the referral to arbitration and lift its stay so the parties can continue litigation in this forum. And she requests sanctions because SmartPay requested arbitration then refused to cooperate.

SmartPay maintains that it has neither waived nor breached the Arbitration Provision. It argues that its decision to maintain its payment policy in the Arbitration Provision in the face of the conflict with JAMS' minimum standards does not prevent its enforcement. On the contrary, because AAA remains an option for arbitration, it argues that Caban still has an obligation to arbitrate. And, it argues, sanctions are inappropriate and unwarranted under the circumstances.

Caban relies on *Pre-Paid Leg. Services, Inc. v. Cahill*, for the proposition that a defendant's failure to pay its portion of fees constitutes default under § 3 of the FAA. 786 F.3d 1287, 1294 (10th Cir. 2015). In *Cahill*, the defendant refused to pay the arbitration fee; he neither requested an extension to do so nor moved to have the plaintiff pay his share. He ignored the requests to pay, which prompted AAA to terminate the arbitration. The arbitration agreement required the parties to abide by AAA rules.  The court held that under the AAA arbitration rules the defendant breached the arbitration agreement which entitled the plaintiff to a lift of the stay.  The Tenth Circuit cited several other decisions that "determined that a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement." *Id*. at 1295; *see*, *e.g.*, *Brown v. Dillard's, Inc*., 430 F.3d 1004, 1011 (9th Cir.

2005). The Tenth Circuit also held that the district court could decide the question of default under § 3; it was not reserved for the arbitrator in the absence of a formal finding of default by the arbitrators. *Pre-Paid Legal Servs*., 786 F.3d at 1298.

District courts in Florida have also held that defendants who refuse to pay the arbitration fee are in default of the arbitration provision. *Freeman v. Smartpay Leasing, LLC*, 617CV938ORL31GJK, 2018 WL 467390, at *2 (M.D. Fla. Jan. 18, 2018) (relying on *Cahill*, vacating order referring the parties to arbitration, reopening the case and reserving ruling on sanctions when SmartPay refused to pay JAMS' arbitration fee on the same basis as argued here). *See also Garcia v. Mason Contract Prods., LLC*, No. 08–23103–CIV, 2010 WL 3259922, at *3 (S.D. Fla. Aug. 18, 2010) (holding that "[b]y failing to timely pay its share of the arbitration fee, Defendant materially breached its obligations, thereby 'scuttling' [its] opportunity" to insist on arbitration).

Here, SmartPay refused to pay its share because it disagreed that JAMS' consumer arbitration rules applied to the case. It communicated its objections to JAMS and refused to waive its contractual terms. Section 3 of the Federal Arbitration Act requires that a federal court must stay court proceedings until arbitration "has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. It does not require a stay if the applicant for the stay is in default. *Id*. SmartPay, in essence, argues that arbitration has not "been had" in accordance with the Arbitration Provision, because it requires the parties to cover their own costs, except for the initial filing fee, and permits arbitration with the AAA. Therefore, it argues, it should not have to waive its rights under the Arbitration Provision to comply with JAMS' standards when another forum exists. The Court disagrees.

Following the holding in *Freeman* and its reliance on *Cahill*, SmartPay's refusal to pay the filing fee is the ultimate reason why the arbitration was closed. Although SmartPay included a clause in the Arbitration Provision permitting Caban to choose a different arbitral body, it did not include a reciprocal right for itself. *See* Doc. 22-1 at 5.   The Court will not read one into the Arbitration Provision. Therefore, the order referring the parties to arbitration and staying the case will be lifted due to SmartPay's default.

But under these circumstances, sanctions are not justified. SmartPay had what it considered a legitimate dispute with JAMS' interpretation of "consumer arbitration" and SmartPay's responsibility for paying all of the fees associated with the arbitration. These rules were in direct contradiction with the Arbitration Provision, and SmartPay had a colorable claim that it should be able to proceed to arbitration with AAA. Given the confusing communications with JAMS and Caban's contradictory communications, the Court does not find that SmartPay acted in bad faith.

## IV.   CONCLUSION

Accordingly, it is

**ORDERED**:

1.    Plaintiff's Motion to Vacate Order Referring Case to Arbitration and to Lift Stay, as Well as Imposition of Sanctions (Doc. 19) is **GRANTED-in-PART.**

2.    The order referring this case to arbitration is **VACATED** and the Clerk is directed to lift the stay and re-open the case.

3.    The request for sanctions is **DENIED**.

4.    SmartPay shall file a response to Plaintiff's Complaint within fourteen (14) days of the date of this Order.

5.      The Parties shall hold a case management conference and file a Case Management

Report on or before July 30, 2018.

**DONE AND ORDERED** in Tampa, Florida on June 28, 2018.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any